FUGGI LAW FIRM, P.C.
ROBERT R. FUGGI, JR., ESQ.
ATTORNEY ID: 037581992
47 MAIN STREET
P.O. BOX 1808
TOMS RIVER NJ 08753
T: 732-240-9095
F: 732-240-9072
ATTORNEYS FOR PLAINTIFF

| | |
|---|---|
| D.N.<br><br>Plaintiff,<br><br>v.<br><br>Stockton University, Daniel Novak, Pi Kappa Phi, John Does (1-20)(Fictitious Individuals); A-Z OWNER CORPORATIONS (1-20)(Fictitious Corporations)<br><br>Defendant(s). | UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY<br><br>Civil Action<br><br>Case No.:<br><br>COMPLAINT AND DEMAND FOR JURY TRIAL; DESIGNATION OF TRIAL COUNSEL; PLAINTIFF'S DEMAND FOR DAMAGES; DEMAND FOR ANSWERS TO INTERROGATORIES; AND NOTICE TO PRODUCE |

Plaintiff, D.N. by and through her attorneys, the Fuggi Law Firm, hereby files the following Complaint against Defendants as captioned above.

## PARTIES

1. Plaintiff D.N. is a female who at the time of the events complained of herein was a first year student at Stockton University.

2. At all material times Plaintiff was living at Stockton University and now maintains a residency in Manahawkin, NJ 08050.

3. At the time of events complained of herein the Plaintiff was an on campus resident of Stockton University living in a Freshman Dormitory.

4. The Defendant Stockton University is located in Galloway Township in Atlantic County, New Jersey, and is a public undergraduate and graduate university of the arts, sciences and professional studies of the New Jersey state system of higher education.

5. At all material times, Defendant Daniel Novak is/was a student of Stockton University and pledge of the fraternity, Pi Kappa Phi at Stockton University.

6. Defendant Daniel Novak's residence is 2 Tuscany Way, Mt. Laurel NJ 08054.

7. Defendant Pi Kappa Phi fraternity house is located at 600 W. White Horse Pike, Egg Harbor City, New Jersey 08215.

8. On at least one occasion the Defendants provided alcohol and/or used a date rape drug/drink spiking in which he placed into the plaintiff's drink without her knowledge, to engage in unlawful sexual contact with the plaintiff without her consent.

9. At all material times, the Title IX Coordinator of Stockton University was an agent and/or employee of Defendant Stockton University, acting or failing to act within the scope, course, and authority of her employment and her employer.

### JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, which gives district courts jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

2. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1343, which gives district courts original jurisdiction over (a) any civil action authorized by law to be brought by any person to redress the deprivation, under color of any State Law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; and (b) any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of the civil rights.

3. Plaintiff brings this action to redress a hostile educational environment pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a), as more fully set forth herein.

4. This is also an action to redress the deprivation of Plaintiff's constitutional rights under the Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), since all defendants reside or resided in this district

and the events giving rise to the claims occurred in this district.

## APPLICABLE LAW AND POLICY

6. Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681(a), states that No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefit of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance. . . .

7. Title IX is implemented through the Code of Federal Regulations. See 34 C.F.R. Part 106.

8. 34 C.F.R. § 106.8(b) provides: . . . A recipient shall adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints alleging any action which would be prohibited by this part.

9. In Gebser v. Lago Vista Independent School District, 524 U.S. 274 (1988), the United States Supreme Court recognized that a recipient of federal educational funds intentionally violates Title IX, and is subject to a private damages action, where the recipient is "deliberately indifferent" to known acts of teacher-student discrimination.

10. In Davis v. Monroe County Board. of Education, 526 U.S. 629 (1999), the United States Supreme Court extended the private

4

damages action recognized in Gebser to cases where the harasser is a student, rather than a teacher.

11. Davis held that a complainant may prevail in a private Title IX damages action against a school district in cases of student-on-student harassment where the funding recipient is a) deliberately indifferent to sexual harassment of which the recipient has actual knowledge, and b) the harassment is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school. Davis, 526 U.S. at 1669-76.

12. The Fourteenth Amendment to the United States Constitution provides in pertinent part that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

### STATEMENT OF FACTS

13. The Plaintiff, D.N. first met the Defendant Dan Novak, at Freshman orientation early in the Summer 2014 and continued to communicate over the summer. Defendant Novak told the Plaintiff that he lived in Mt. Laurel which was close to her hometown of Moorestown.

14. Coincidentally, as the Plaintiff was getting ready to leave for college, the Plaintiff's cousin and Aunt told her that their

5

long-time family friend's son Dan was also going to Stockton. Thereafter plaintiff D.N. met Defendant Novak at orientation.

15. D.N. next saw Defendant Novak during New Student week at Stockton University in late August 2014. D.N. was introduced to some of the Defendant's floor-mates and all of the students began to hang out and get to know one another.

16. Defendant Novak had a single room in Freshman Dorm Freshman J Building and he became friendly with three dorm-mates at the end of the hall. Their names were T.N., J.B., and D.M.

17. Defendant Novak, as well as T.N. and J.B. were affiliated with the Pi Kappa Phi fraternity.

18. During New Student week, fraternities and sororities began recruiting freshman to join their respected organizations. Pi Kappa Phi took part in recruiting Stockton University students at this event. This event is known colloquially as "Rush Week."

19. As a part of New Student Week, Stockton University holds a Stockton University sponsored assembly, run by Stockton University personnel and students for incoming Stockton freshman that openly discusses sexual activity, demonstrates sexual activity, and is mandatory for all incoming freshman.

20. At these assemblies, inappropriate and sexually charged topics were often discussed and encouraged that are outside the bounds of normal scholastic endeavors. Lines such as "If she spits, don't trust her, masturbation, oral sex, and dry sex" were

portrayed on placards and power point by Stockton University throughout the assembly.

21. Mandatory school sponsored assemblies like this explain why Stockton University has the systemic problems it has. These assemblies have no implicit value in higher education.

22. Stockton University has created a dangerous sexually charged environment for incoming young women as freshman students at Stockton University.

23. Prior to September 22, 2014 Defendant Novak was talking about a Fraternity he was interested in joining. He asked D.N. to join him for the Fraternity Date Night/Rush Event for pledges and their dates at Pi Kappa Phi fraternity.

24. Defendant Novak explained pledges of Pi Kappa Phi were bringing dates and it was a chance to meet all the Brothers of Pi Kappa Phi and hang out. He said it was dressier than a regular party and suggested the Plaintiff wear something nice.

25. Initially, D.N. had no interest in, or knowledge about, Greek life or Pi Kappa Phi. Nor was she educated in any of the customs, or processes associated with Greek Life, and was not aware of the differences between Recognized and Non-recognized, on-campus/off-campus Fraternities and Sororities such as Pi Kappa Phi.

26. D.N. told her parents about the Pi Kappa Phi Date Night, since they knew of Defendant Novak and his family. Her parents told

her to be careful; but they were comfortable with her going to the formal and participating socially.

27. This would be D.N.'s first and only college fraternity party.

28. The date of the Pi Kappa Phi party was Monday, September 22, 2014.

29. That night, D.N.'s roommate was not in the dormitories as she was getting ready elsewhere, but the two were communicating via Twitter.

30. Defendant Novak told Plaintiff that he would pick her up around 9:00 p.m. for the Pi Kappa Phi party.

31. That night the Plaintiff wore a black fitted skirt, black tank/cami with a blue lace cap sleeve pull-over top layered over the cami and a new pair of black flip flops. She was dressed for a special occasion.

32. The Plaintiff's friends on the floor saw her dressed up and asked where she was going. The Plaintiff responded by telling them about the Pi Kappa Phi date night fraternity party.

33. The Plaintiff's friends were surprised that they hadn't heard about it, and D.N. explained it was an "invite only" rush party.

34. The Plaintiff felt bad because a few girls thought they should have been invited and weren't. At the same time, it also made D.N. feel a little special that that she was invited and going.

35. At 10:00 p.m., Defendant Novak still hadn't shown up to pick up D.N. so she texted him. Defendant Novak's response was that he

was already at the Pi Kappa Phi party and he would pick her up soon.

36. At 11:00 p.m, D.N. was beginning to think he wasn't going to show up.

37. Around midnight Defendant Novak called the Plaintiff and he stated that "they" were on the way. This confused the Plaintiff as she didn't know who or what "they" meant. The Plaintiff assumed Defendant Novak alone would be picking her up as he had his car on campus.

38. The phone call from Defendant Novak was received at 11:53 p.m. as recorded on Verizon billing detail.

39. In the early morning of September 23, 2014, Plaintiff D.N. was picked up in front my building, Freshman Dorm Building N Parking Lot.

40. The car she was picked up in was a small older car, about size and shape of Toyota Camry with fabric seats. The car was dirty and messy. It was dark so it was hard to discern the color of the car.

41. Defendant Novak was in the front passenger seat, the Driver was a heavy set male, in the back seat was a female friend of the driver, an upper classman at Stockton University.

42. D.N. could tell Defendant Novak had already been drinking by his conduct.

43. The driver was unfriendly and rude. The Plaintiff got the feeling he drew the short card and was requested to drive while he appeared to have been drinking.

44. The Plaintiff did not recall if everyone in the car introduced themselves and due to all the changes in plans, D.N. was now a little put off and anxious.

45. As the car left the parking lot, D.N. became pre-occupied with the fast and dangerous driving as they left Stockton University. There was no security around to monitor this erratic driving.

46. The Plaintiff recalls exiting Stockton heading out of the Freshman Dorm parking lot via Louisville Ave, made right on Vera King Drive to what she refers to as the back entrance of Stockton, then made another right.

47. The driver was going very fast, and erratically, when D.N. said something about driving so fast, the driver told her to shut-up.

48. The car turned Right onto Rte. 30 and D.N. practically landed in the girls lap even though she had her seat belt on. The other female in the car seemed irritated with his driving too.

49. Defendant Novak was reminded by the driver of his "pledge responsibility" to Pi Kappa Phi to get cigarettes and drinks to bring to the Fraternity brothers at the party.

50. The car turned left into the WAWA from Rte. 30.

51. As Defendant Novak got out of car, the Driver told him to hurry and Defendant Novak seemed nervous and he said to the Driver, "Can I get you anything?"

52. D.N. stayed in car with the driver and girl.

53. Defendant Novak came back to the car with two energy drinks and two packs of cigarettes pursuant to his directives as a Phi Kappa Phi pledge.

54. The car then turned right out of WAWA and drove a short distance and turned right into the Pi Kappa Phi fraternity house driveway at 600 W. White Horse Pike, Egg Harbor City. The car pulled up along the side of the house and the four went in the side entrance.

55. The Plaintiff and Defendant Novak were given a lot of attention from the other Pi Kappa Phi members when they arrived at approximately 12:20-12:30 a.m. at the Pi Kappa Phi fraternity house.

56. Statements from other Pi Kappa Phi members and/or associates included: "Look it's our guy, Dan is here!" "It's our dude, look he got me two packs" "Oh is this your date she's so pretty".

57. Multiple Pi Kappa Phi fraternity members and/or associates gathered around D.N. and were complementing her for the way she looked.

58. The cigarettes were given to a Pi Kappa Phi member with brown hair. He looked familiar to the Plaintiff as a fellow Stockton student and he appeared to be heavily intoxicated.

59. At some point during these exchanges Dan handed the Energy drinks to the fraternity "brother" who requested them.

60. The demeaning manner in which the older Pi Kappa Phi members/associates spoke to Defendant Novak made D.N. very uncomfortable.

61. The Plaintiff does not know what happened to the driver and the girl from the car as she doesn't recall seeing them again after they arrived at the Pi Kappa Phi fraternity house.

62. It also appeared to the Plaintiff, that she was the last date to arrive to the Pi Kappa Phi party. She came to this conclusion as Defendant Novak had been at the party earlier, left the party to get her, and was already intoxicated. There were a lot people drinking alcohol and dancing inside the Pi Kappa Phi house by the time D.N. arrived and it appeared they had been there for a long time. The Plaintiff did not see anyone arrive after she did.

63. As she watched girls and guys dance, Defendant Novak brought over two alcoholic drinks, one for D.N. and one for him, which were both in clear cups.

64. One of the drinks Novak was holding was red and the other was green. Novak handed D.N. a drink with the green concoction in

12

it. D.N. recalls that the girls had to drink the green drinks and the guys were drinking the red drinks as she could see the colors in the cup.

65. D.N. recalls that her green drink tasted like watered down fruit juice and also that it was very salty with an unusual taste.

66. The drinks were served in small, clear plastic cups, not the usual red solo party type cups. This was to assist the Pi Kappa Phi members and associates from differentiating between the green "girls" drinks and red "boys" drinks.

67. The Plaintiff did not see where the drinks where being prepared or what Pi Kappa Phi members had mixed into the drinks.

68. D.N. made a comment to Defendant Novak about her watered down and unusual tasting drink and asked if she could taste his. Novak gave his drink to her and it tasted vastly different because his drink had the distinct taste of alcohol in it.

69. The Plaintiff asked Defendant Novak to taste her drink: but he refused to taste it.

70. D.N. remembers it being very hot inside the Pi Kappa Phi fraternity house, which made the Plaintiff uncomfortably hot and thirsty.

71. D.N. asked Defendant Novak to get her another drink and he provided her with another cup of the green drink.

72. The Plaintiff was still very thirsty due to the salty taste of the green drink and asked Novak for water.

73. The Plaintiff and Defendant Novak mingled with some of the guests and danced for a while. D.N. then began to feel a very odd feeling suddenly come over her.

74. D.N., feeling sickly, asked Defendant Novak if they could find the bathroom but after looking at how dirty it was, she decided to go outside instead.

75. By this time, D.N. was feeling dizzy and began to experience a headache and didn't feel right. The music was incredibly loud and was now really bothering her. D.N. did not want to go back to where the music was. D.N. needed some space so they went downstairs to the basement. The basement and bathroom were close to the back exit.

76. The Plaintiff remembers feeling very weird. Not drunk but not right. Defendant Novak stated that he would get them a ride back to the Stockton University campus.

77. **This was the last memory D.N. has before "blacking out" and becoming incapacitated.**

78. **The last memory D.N. has is being in the Pi Kappa Phi's basement with an extreme headache, being very thirsty and tired and feeling strangely. All she wanted to do was lie down, but the couch was disgusting and she told Defendant Novak, that she wanted to go back to her dorm.**

79. **This is the last memory D.N. had from that night. She had only been present at the Pi Kappa Phi fraternity house for about 45**

minutes to one (1) hour since her arrival before becoming incapacitated as a result of being drugged.

80. The Plaintiff's roommate, concerned for D.N.'s safety, texted her. However, D.N. never responded to the text message from her roommate which was sent at 1:34 AM stating: **"Tell me when you're on your way back pleaseee…. wait can u get on the floor???"**. Unfortunately, Plaintiff D.N. was too incapacitated to reply.

81. D.N.'s next memory is waking up in Defendant Novak's on-campus Stockton dormitory room (thinking it was afternoon). She was in his bed with him staring at her naked. She had no clothes on and was very scared as to what occurred.

82. D.N. was unusually sore all over, including her vagina and anus, and felt that something sexual had happened to her. She remembers feeling very anxious and felt that she needed to get out of his dorm room as soon as possible. She did not remember taking off any of her clothes because she was too incapacitated.

83. D.N. was scared and said "I have to go" and didn't even ask Novak what happened because she was too afraid and felt the need to get away fast.

84. As she looked around Defendant Novak's dorm room, the clothes she had worn to the party the night before **were inside out and in rolled into a ball on the floor as if they were pulled off her and thrown.**

85. D.N.'s **undergarments were missing,** so too were her flip-flops and the $20 she had on her person.

86. At 9:46 AM: D.N. missed another text message from her roommate K.C. **"where are u???" are u not going to class this morning"???** **D.N. did not respond.**

87. Defendant Novak handed D.N. a pair of his sweat pants and a shirt and helped gather what was left of her belongings. D.N. never recovered her black flip flops, the $20, or her undergarments.

88. D.N. left J building as quickly as she could. She was still very sick and ill feeling and threw up as soon as she got outside of the building.

89. D.N. recalls there were Stockton University maintenance workers outside that offered no assistance.

90. **Barefoot, disheveled, and sore (including in her vagina and anus), D.N. arrived back at her dorm room.**

91. When D.N. arrived back to her room, her roommate was not in room when she arrived. D.N. remembers not feeling well and needed something to drink and eat.

92. D.N. went to Starbucks and remembers that she still had Defendant Novak's clothes on.

93. At Starbucks, D.N. ran into her hometown friend Freshman B.N. It was obvious to him something was wrong.

94. D.N told B.N. that she went to a Pi Kappa Phi social and that she thought something bad had happened. She told B.N. that she may have been drugged and/or sexually assaulted.

95. B.N. asked if she drank too much, to which D.N. responded: "I didn't really drink, certainly not nearly enough to have no memory". B.N. commented well, "Pi Kapp is sketchy".

96. D.N. explained that something bad happened and she told her what I knew. "I don't remember anything and this has never happened before". She asked if I drank too much. D.N. told her, "no I didn't really drink." (At the same time, she wasn't really thinking that she could have been drugged and sexually assaulted.)

97. D.N. missed two classes as a result of her sexual assault: Writing from Experience, 10:30-12:30, Macroeconomics 12:30-2:30. It is very unusual for D.N. to miss class.

98. D.N. was so upset that she called her sister and her mother. Because she was confused, unsure, and experiencing pain from what had happened, D.N. didn't reveal to either one what she had believed to happen-which is that she was drugged and sexually assaulted. The Plaintiff did let them know that she didn't feel well at the party and that she stayed in Defendant Novak's dorm room that night.

99. The entire day of September 23, 2014 was a blur to D.N. Although awake, her head was not clear and anything she did seemed hazy.

She was still recovering from the night prior. Later, D.N. and her roommate watched Netflix for the rest of the day. She only left room for privacy of a couple of calls.

100. **On this day and for a few more days, she was extremely sore, bleeding vaginally *and rectally*. Both extremities were extremely sore and it was difficult to go to the bathroom.**

101. Prior to attending the Pi Kappa Phi fraternity party, she had experienced none of these symptoms.

102. The next day Sept 24, 2014 D.N. was so sore she could barely move.

103. Plaintiff went to class and saw a friend, D.N. proceeded to tell her about what happened.

104. The Plaintiff's friend said she never heard of a date night for Pi Kappa Phi.

105. On September 25, 2014 the Plaintiff met up with Defendant Novak so that she could return his sweatpants and tee shirt. Defendant Novak said he needed that particular tee shirt for a fire prevention class.

106. **Through text messages, over the next few days, D.N. asked Defendant Novak if he had sex with her that night in which he said "yes, don't you remember?" D.N.'s reply was "No". Defendant Novak replied "You really don't remember"?**

107. **Plaintiff D.N. never consented to sexual relations with Novak that night in question. It would have been impossible for her to consent considering her incapacitated state.**

108. Police Investigative reports revealed that on Sept 23, 2014: Defendant Novak's friend D.M. swiped onto the floor at 1:53AM, Dan swiped onto the floor at 2:11AM, and a third Stockton University student, D.S. swiped onto the floor at 2:11AM (approx. 30 seconds after Defendant Novak). **Plaintiff believes she may have been sexually assaulted by all three (3) male Stockton University students that night — both vaginally and anally.**

109. In the days and months that followed, D.N. felt mentally distraught and emotionally unstable due to this traumatic experience that Plaintiff's underwent.

110. A few weeks to a month later Defendant Novak called the Plaintiff on a night in which he had been drinking alcohol and seemed intoxicated. D.N. remembers the day to be a Thursday, and Defendant Novak was at a Pi Kappa Phi party, which usually took place on Thursday nights. **Defendant Novak admitted "he was sorry for what had happened a month before" to D.N.**

111. The rest of the semester was traumatic for the Plaintiff, D.N.'s mother would have to pick her up every Friday and return her to Stockton University Monday morning because D.N. did not want to stay at school for fear of being sexually assaulted.

19

112. The Plaintiff found it difficult to make it through each week of
     school and she did not go out or attend Stockton University
     parties anymore.

113. D.N. started having frequent flashbacks/dreams involving
     Defendant Novak, the Pi Kappa Phi basement, multiple people
     looking and touching her while she is exposed and naked.

114. D.N. also has flashbacks/dreams in which she is in a car,
     suffocating because of exhaust, cold, with someone sitting on
     her chest.

115. All these flashbacks/dreams she experienced where very sexual in
     nature, involving humiliation, not being able to breath,
     suffocating, and female body parts.

116. In the spring semester commencing in January 2015, D.N. was
     enjoying being on winter break but was very depressed to go back
     to Stockton University and was looking for a fresh start.

117. At some point during the semester, Defendant Novak called and
     texted D.N. asking her to hang out, to which D.N. never
     responded.

118. Defendant Novak again **"apologized for the night of September 23,
     2014"** in one of his texts, but never told her what happened that
     night other than **"he had sex with her."** D.N. could not have
     consented because she was incapacitated.

119. In May or June of 2015, Defendant Novak texted D.N. wishing her
     a good summer. As Plaintiff's depression and anxiety increased,

she started to work-out and then sought help at school. Plaintiff didn't eat, and she lost a lot of weight. She no longer wore make up or did her hair. She began to wear clothes that didn't fit her properly.

120. D.N. began counseling by way of an on campus counseling session with Carolos, a Stockton University counselor.

121. When the semester ended in May, D.N. began to see Dr. Norman Chazin as school counseling sponsored by Stockton University is not provided during the summer.

122. In March of 2015, the doctor prescribed an anti-depressant medication to help with her depression.

123. On April 15, 2015, D.N. disclosed the incident to Carlos Martinez, which immediately resulted in a meeting with Stockton University representatives Laurie Dutton and Amy Jones.

124. As the semester ended, D.N. and her mother were told not to discuss the incident publicly as it would make the Women's Center and Laurie Dutton look bad since Carlos Martinez was a part of her team and that Carlos Martinez did not understand that he had an obligation to report the incident.

125. The Plaintiff reluctantly returned to Stockton University for the Fall Semester of 2015.

126. The Plaintiff spent a great deal of time crying all the time in her room because of her sexual assault.

127. D.N. start seeing Carlos Martinez again but decided to stop because it wasn't helping and the exercises he had her participate in were not helping with the anxiety and depression.

128. In September D.N didn't want to get out of bed. She was depressed and anxious all the time.

129. In mid-October, Plaintiff's roommates and friends were going to a costume party and invited her. D.N.'s anxiety became so great she started having panic attacks at the thought of costumes, being left alone by her friends, being at a party, especially at Pi Kappa Phi. But that is where virtually all Stockton students go to party.

130. Since being at Pi Kappa Phi and with Defendant Novak in September 2014, she is not ever comfortable on Stockton University's campus.

131. Because of what happened to her, she is no longer the same happy and spirited person that she once was.

132. D.N. became suicidal and her family grew concerned and made an appointment with Psychiatrist Zoe Salman MD.

133. D.N. began seeing Dr. Salman her at the beginning of October 2015.

134. At this point, she had trouble falling asleep, or only sleeping a few hours at a time as she was constantly being awoken by re-occurring dreams, nightmares, and flashbacks.

135. Over the 2015/2016 holiday break D.N. texted him to find out again what happened and Defendant Novak never answered.

136. On January 20, 2016 D.N. met with Stockton representatives Valerie Hayes and Diane Epp in pursuit of Title IX proceeding against Defendant Novak.

137. D.N. Met with Interim Chief of Stockton Police January 22, 2015 to review facts/evidence.

138. On January 27, 2016 D.N. reported the sexual assault to OPC. Grygon, Title IV Advocate Valerie Hayes, and Officer Brian Collins conducted an interview in the sergeants office.

139. In March 2016 D.N. was admitted to Princeton House with Severe Depression for Self-Medicating.

140. April through May 2016 D.N. completed intensive outpatient for Women's Trauma.

141. Stockton University's Title IX Investigation officially came to a conclusion in March 2017 in which Stockton University did not take any administrative action against the Defendants Daniel Novak or Pi Kappa Phi fraternity.

## COUNT ONE

### VIOLATION OF TITLE IX AS TO DEFENDANT STOCKTON UNIVERSITY (20 U.S.C. § 1681, et seq.) (Retaliation by Withholding Protections Otherwise Conferred by Title IX)

142. Stockton University had reassured students that they would protect and investigate any and all sexual attacks regardless of whether the matter was referred to law enforcement.

143. Once a victim of sexual abuse insisted upon involving law enforcement for a criminal investigation, the University retaliated against victims by declining to investigate the matter, report all instances of sexual abuse, or to otherwise comply with their responsibilities as mandated by Title IX.

144. Stockton University knew of the conduct of Pi Kappa Phi, which included their proclivity to endorse underage drinking and sexual assaults of Stockton's student body.

145. Stockton University has been on notice of past incidents involving rape and sexual assault, underage drinking, and fighting, involving Stockton students and Pi Kappa Phi members and declined to intervene to prohibit the conduct and as such, was complicit.

## COUNT TWO

### VIOLATION OF TITLE IX AS TO STOCKON UNIVERSITY (20 U.S.C. § 1681, et seq.) (The School's Deliberate Indifference to Alleged Sexual Harassment)

146. The sex-based harassment articulated in the Plaintiffs' General Allegations was so severe, pervasive, and objectively offensive that it deprived Plaintiff of access to educational opportunities or benefits provided by the school.

147. The Defendant University created and/or subjected Plaintiff to a hostile educational environment in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a) ("Title IX"),

because a) Plaintiff was a member of a protected class; b) she was subjected to sexual harassment in the form of a sexual assault by a former student; c) she was subjected to harassment based on her sex; and d) she was subjected to a hostile educational environment created by the University's lack of policies and procedures and failure to properly investigate and/or address the sexual assault and subsequent harassment.

148. Defendant Stockton University and its officials had actual and constructive knowledge of the sexual assault and the resulting harassment of Plaintiff created by its failure to investigate and discipline Plaintiff's attacker in a timely manner and consistent with its own policy and federal and state law.

149. The Defendant Stockton University's failure to promptly and appropriately respond to the alleged sexual harassment, resulted in Plaintiff, on the basis of her sex, being excluded from participation in, being denied the benefits of, and being subjected to discrimination in the District's education program in violation of Title IX.

150. Defendant Stockton University failed to take immediate, effective remedial steps to resolve the complaints of sexual harassment and instead acted with deliberate indifference toward Plaintiff.

151. Defendant Stockton University persisted in its actions and inaction even after it had actual knowledge of the harm suffered by Plaintiff.

152. Defendant Stockton University engaged in a pattern and practice of behavior designed to discourage and dissuade students and parents of students who had been sexually assaulted from seeking prosecution and protection and from seeking to have sexual assaults from being fully investigated and fully reported.

153. This policy and/or practice constituted disparate treatment of females and had a disparate impact on female students.

154. Plaintiff has suffered emotional distress and psychological damage, and her character and standing in her community have suffered from the harassment fostered as a direct and proximate result of Defendant School District's deliberate indifference to her rights under Title IX.

### COUNT THREE

### 1983 VIOLATION AS TO DEFENDANTS STOCKON UNIVERSITY,
### (42 U.S.C. § 1983)

155. Under the Fourteenth Amendment, Plaintiff had the right as a public school student to personal security and bodily integrity and Equal Protection of Laws.

156. Defendants Stockton Employees were all state actors acting under the color of state law.

157. Defendants each subjected Plaintiff to violations of her right to personal security and bodily integrity and Equal Protection of Laws by: failing to investigate Daniel Novak and Pi Kappa Phi's misconduct; failing to appropriately discipline Daniel Novak and Pi Kappa Phi; failing to adequately train and supervise Stockton Employees; and manifesting deliberate indifference to the sexual assault and ongoing harassment of Plaintiff by Daniel Novak and Pi Kappa Phi.

158. Stockton University has and/or had unconstitutional customs or policies of a) failing to investigate evidence of criminal and tortious misconduct against Stockton University students in the nature of violations of their right to personal security and bodily integrity and b) failing to adequately train and supervise School District employees with regard to maintaining, preserving and protecting students from violations of their right to personal security, bodily integrity, and Equal Protection of the Laws.

159. On information and belief, the University has followed these unconstitutional customs and policies not only with regard to Plaintiff but also with regard to criminal and tortious misconduct committed against other Stockton University students.

160. The University's policies and/or practices constituted disparate treatment of females and had a disparate impact on female students.

161. Defendants Stockton University and Daniel Novak are or were at the time of events complained of within, policymakers for the purpose of implementing the University's unconstitutional policies or customs.

162. Plaintiff has suffered emotional distress and psychological damage, and her character and standing in her community have suffered from the harassment fostered as a direct and proximate result of Defendant University's deliberate indifference to her rights under the Fourteenth Amendment.

## COUNT FOUR

### LIABILITY FOR FAILURE TO TRAIN, SUPERVISE, AND PROTECT STUDENTS FROM SEXUAL ASSAULT AS TO DEFENDANT STOCKTON UNIVERSITY (42 U.S.C. § 1983)

163. Defendant Stockton Employees, were "state actors" working for Stockton University, a federally funded school system.

164. Defendant Stockton Employees acted under "color of law" when refusing to respond to Plaintiff's sexual assault on school premises.

165. Defendant Stockton Employees failed to preserve Plaintiff's constitutional right to equal protection as guaranteed by the Fourteenth Amendment.

166. Under the Equal Protection Clause of the Fourteenth Amendment, Plaintiff had the right to equal access to an educational environment free from harassment and discrimination.

167. Defendant Stockton Employees should have known that their response to sexual assault allegations must comply with federal law, particularly as outlined in Title IX's published and widely promulgated implementing regulations.

168. Defendant Stockton Employees each violated Plaintiff's right to equal access by:

a. Failing to take immediate and appropriate action to investigate or otherwise determine what occurred once informed of possible sexual violence;

b. Failing to take prompt and effective steps to end the sexual violence, prevent its recurrence, and address its effects, whether or not the sexual violence is the subject of a criminal investigation;

c. Failing to take steps to protect the Plaintiff as necessary, including interim steps taken prior to the final outcome of the investigation;

d. Failing to provide a grievance procedure for students to file complaints of sexual discrimination, including complaints of sexual violence. The procedures must include an equal opportunity for both parties to present witnesses and other evidence and the same appeal rights;

e. Failing to use a preponderance of the evidence standard to resolve complaints of sex discrimination in grievance procedures; and

f. Failing to notify both parties of the outcome of the complaint.

169. Defendant Stockton University violated Plaintiff's Fourteenth Amendment right to equal protection by failing to properly train and supervise its employees as to these mandated investigative requirements.

170. These policies and/or practices constituted disparate treatment of females and had a disparate impact on female students.

171. Defendants' actions and lack of actions were the proximate cause of Plaintiff's emotional distress and psychological damage, and her character and standing in her community have suffered from the harassment fostered as a result of Defendant Stockton University's deliberate indifference to her right to equal protection under the Fourteenth Amendment.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may

constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

## COUNT FIVE

### VIOLATION OF THE JEANNE CLERY DISCLOSURE OF CAMPUS SECURITY POLICY AND CAMPUS CRIME STATISTICS ACT (CLERY ACT)

172. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

173. The Clery Act, passed in November 1990, requires that higher education institutions whose students receive federal financial aid collect and report crime data to the U.S. Department of Education.

174. A 1992 amendment to the Clery Act established the Campus Sexual Assault Victims' Bill of Rights, requiring schools to provide certain basic rights to survivors of sexual assaults on campus, including:

175. Giving the alleged victim and the alleged assailant equal opportunity to have others present in disciplinary proceedings and equal notification of the outcome of such proceedings;

176. Notifying alleged victims of the availability of counseling services, and of their right to pursue remedies through local police;

177. Notifying alleged victims that they have the option of changing classes and dormitory assignments in order to avoid their alleged assailants;

178. The Clery Act requires colleges and universities to do the following with regards to sexual assault reports: 1) Publish an Annual Security Report; 2) Disclose crime statistics for incidents that occur on campus, in unobstructed public areas immediately adjacent to or running through the campus and at certain non-campus facilities; 3) Issue timely warnings about Clery Act crimes which pose a serious or ongoing threat to students and employees; and 4) Devise an emergency response, notification, and testing policy.

179. Defendant Stockton University failed to disclose crime statistics for incidents that occur on campus, in unobstructed public areas immediately adjacent to or running through the campus and at certain non-campus facilities;

180. Defendant Stockton University failed to issue timely warnings about crimes involving Pi Kappa Phi, which posed a serious and ongoing threat to students that Stockton University allowed to occur.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

## COUNT SIX

### SEXUAL ASSAULT/SEXUAL ABUSE

181. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

182. At all times relevant, Daniel Novak, is/was a student at Stockton University who was present on or about Stockton

33

University's campus and at Pi Kappa Phi's fraternity house and is/was a member of Pi Kappa Phi at Stockton University.

183. On at least one occasions the Defendant, Daniel Novak used a date rape drug or alcohol spiking which he placed into the plaintiff's drink without her knowledge, to engage in unlawful sexual contact with the plaintiff without her consent.

184. All Defendants acted with the purposeful, knowing, reckless, negligent intent to cause harm and/or offensive contact to the Plaintiff D.N. and thereby put her in imminent apprehension and fear for her well-being.

185. All Defendants' actions would be offensive to a person with a reasonable sense of personal dignity.

186. Plaintiff did not and could not consent to the acts, and any purported consent was secured through fraud, deception and undue influence, coercion and duress thereby rendering it void.

187. Defendants' actions were outrageous, and constituted a wanton and reckless disregard to Plaintiff's health and well-being.

188. As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal

34

life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

189. All defendants are responsible for sexual assault of Plaintiff. All defendants acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff by allowing the sexual assault of the plaintiff.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual

assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

## COUNT SEVEN

### AGGRAVATED ASSAULT

190. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

191. At all times relevant, Daniel Novak, is/was a student at Stockton University who was present on Stockton University's campus.

192. On at least one occasions the Defendant, Daniel Novak used a date rape drug or alcohol spiking which he placed into the plaintiff's drink without her knowledge, to engage in unlawful sexual contact with the plaintiff without her consent.

193. Defendants attempted to cause serious bodily injury to plaintiff purposely, knowingly, or under circumstances manifesting an extreme indifference to the value of human life.

194. Defendants attempted to cause significant bodily injury to plaintiff knowingly, under circumstances manifesting extreme

indifference to the value of human life, or recklessly to cause such significant bodily injury.

195. As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

196. All defendants are responsible for aggravated assault of Plaintiff. All defendants acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff by allowing the aggravated assault of the plaintiff.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

## COUNT EIGHT

### SEXUAL BATTERY

197. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

198. At all times relevant, Daniel Novak, is/was a student at Stockton University who was present on Stockton University's campus.

199. On at least one occasions the Defendant, Daniel Novak used a date rape drug or alcohol spiking which he placed into the plaintiff's drink without her knowledge, to engage in unlawful sexual contact with the plaintiff without her consent.

200. During the relevant times alleged herein Defendant Daniel Novak purposefully, knowingly, intentionally, carelessly, recklessly, and negligently caused harm to plaintiff, D.N. by an act of sexual contact or sexual penetration for sexual gratification by duress and force.

201. During the relevant times alleged herein Defendant Daniel Novak purposefully, knowingly, intentionally, carelessly, recklessly, and negligently caused harm to plaintiff by sexual contact, by an intentional touching, either directly or through clothing, of the plaintiff D.N.'s intimate parts for the purpose of sexually arousing or sexually gratifying the Defendant Daniel Novak, by duress and force.

202. During the relevant times alleged herein Defendant Daniel Novak purposefully, knowingly, intentionally, carelessly, recklessly, and negligently caused harm to plaintiff by an act of sexual contact or sexual penetration between the plaintiff and

Defendant Daniel Novak, for sexual gratification by duress and force.

203. During the relevant times alleged herein Defendant Daniel Novak purposefully, knowingly, intentionally, carelessly, recklessly, and negligently caused harm to plaintiff by sexually contacting, battering, harassing, touching, penetrating plaintiff, D.N. for sexual gratification by duress and force.

204. During the relevant times alleged herein, Defendant Daniel Novak grabbed and groped the plaintiff for the purpose of sexually arousing or gratifying Defendant Daniel Novak.

205. As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and

treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

206. All defendants are responsible for sexual battery of Plaintiff. All defendants acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff by allowing the sexual battery of the plaintiff.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

## COUNT NINE

### CIVIL BATTERY

207. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

208. At all times relevant, Daniel Novak, is/was a student at Stockton University who was present on Stockton University's campus and is/was a member of Pi Kappa Phi fraternity.

209. On at least one occasions the Defendant, Daniel Novak used a date rape drug or alcohol spiking which he placed into the plaintiff's drink without her knowledge, to engage in unlawful sexual contact with the plaintiff without her consent.

210. Defendants caused actual harmful and offensive touching of Plaintiff with the intent to cause offensive touching of Plaintiff.

211. Defendants' actions would be offensive to a person with a reasonable sense of personal dignity.

212. Plaintiff did not consent and could not consent to the touching which was against her will and any failure to report the incidents was the result of overwhelming mental duress, undue influence and coercion.

213. Defendants' actions were outrageous, and constituted a wanton and reckless disregard to Plaintiff's health and well-being.

214. As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

215. All defendants are responsible for Civil Battery of Plaintiff. All defendants acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff by allowing the battery of the plaintiff.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages,

loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

## COUNT TEN

### FALSE IMPRISONMENT

216. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

217. At all times relevant, Daniel Novak, is/was a student at Stockton University who was present on or about Stockton University's campus and is/was a member of Pi Kappa Phi fraternity.

218. On at least one occasions the Defendant, Daniel Novak used a date rape drug or alcohol spiking which he placed into the plaintiff's drink without her knowledge, to engage in unlawful sexual contact with the plaintiff without her consent.

219. At all times relevant hereto, while Defendant Daniel Novak perpetrated his sexual battery, sexual assault, battery and assault, of the plaintiff, the defendant knowingly restrained Plaintiff unlawfully, interfering substantially with her liberty then sexually assaulted her.

220. The circumstances under which defendant restrained the Plaintiff exposed her to risk of serious bodily injury.

221. As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others

has been substantially impaired, needing to obtain help and
treatment from professionals and health care professionals in
general and may incur medical, hospital and psychiatric expenses
in amounts yet to be determined.

222. All defendants are responsible for false imprisonment of
Plaintiff. All defendants acted carelessly, recklessly,
negligently, and grossly negligent, and caused or allowed to be
caused great harm to plaintiff by allowing the false
imprisonment of the plaintiff.

WHEREFORE, Plaintiff respectfully requests judgment in her
favor and against all defendants for compensatory damages for
Plaintiff's psychological and emotional distress and damages,
loss of standing in her community, damage to her reputation, and
her family's unreimbursed out of pocket expenses incurred in
response to these circumstances; Punitive damages; Injunctive
relief requiring Defendant University to take effective steps to
prevent sex-based discrimination and harassment, including
sexual assault, in its education programs; fully investigate
conduct that may constitute sex-based harassment and/or sexual
assault; appropriately respond to all conduct that may
constitute sex-based harassment and/or sexual assault; and
mitigate the effects of harassment and/or assault including by
eliminating any hostile environment that may arise from or

contribute to it; statutory interest; costs; and reasonable attorney fees.

## COUNT ELEVEN

### INVASION OF PRIVACY

223. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

224. Defendants intentionally intruded upon the plaintiff physically or otherwise, upon the solitude or seclusion of her private affairs or concerns, which was highly offensive to a reasonable person. Bisbee v. John C. Conover Agency, Inc., 186 N.J. Super. 335, 339 (1982) (quoting Restatement (Second) of Torts, supra, § 652B).

225. Plaintiff possessed a reasonable expectation of privacy while attending school at Stockton University.

226. Defendant Stockton University failed to provide reasonable accommodations for the Plaintiff D.N. she was a resident on campus.

227. As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks;

anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

228. All defendants are responsible for Plaintiff's invasion of privacy. All defendants acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff by allowing the invasion of the plaintiff's privacy.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to

48

prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

## COUNT TWELVE

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

229. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

230. At all times relevant, Daniel Novak, is/was a student at Stockton University who was present on Stockton University's campus and is/was a member of Pi Kappa Phi fraternity.

231. On at least one occasions the Defendant, Daniel Novak used a date rape drug or alcohol spiking which he placed into the plaintiff's drink without her knowledge, to engage in unlawful sexual contact with the plaintiff without her consent.

232. Defendant Daniel Novak by duress and intimidation, caused Plaintiff to engage in sexual contact with him, which included

the humiliating acts set forth in previous counts of this Complaint, including, but not limited to, all for the sexual gratification of defendant, Daniel Novak.

233. The sexual abuse of Plaintiff by defendants proximately caused the plaintiff to suffer extreme humiliation and anxiety, severe emotional distress and mental anguish and other physical and psychological injuries including repression of memory.

234. Defendants acted either intentionally or recklessly and knew or should have known that the inappropriate sexual touching and other misconduct in their relationships with Plaintiff would result in serious emotional distress to Plaintiff beyond what a normal person could be expected to endure.

235. The sexual misconduct of defendants alleged herein exceeded all possible bounds of human decency and was outrageous and unacceptable in a civilized society.

236. As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the

future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

237. All defendants are responsible for Plaintiff's intentional infliction of emotional distress. All defendants acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff through intentional infliction of emotional distress.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may

constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

## COUNT THIRTEEN

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

238. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

239. At all times relevant, Daniel Novak, is/was a student at Stockton University who was present on Stockton University's campus and is/was a member of Pi Kappa Phi fraternity.

240. Defendant Daniel Novak by duress and intimidation, caused Plaintiff to engage in sexual contact with him, which included the humiliating acts set forth in previous counts of this Complaint, including, but not limited to, all for the sexual gratification of defendant, Daniel Novak.

241. The sexual abuse of Plaintiff by defendants proximately caused the plaintiff to suffer extreme humiliation and anxiety, severe emotional distress and mental anguish and other physical and psychological injuries including repression of memory.

242. Defendants acted carelessly, negligently, or recklessly and knew or should have known that the inappropriate sexual touching and other misconduct in their relationships with Plaintiff would result in serious emotional distress to Plaintiff beyond what a normal person could be expected to endure.

243. The sexual misconduct of defendants alleged herein exceeded all possible bounds of human decency and was outrageous and unacceptable in a civilized society.

244. As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in

general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

245. All defendants are responsible for Plaintiff's intentional infliction of emotional distress. All defendants acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff through negligent infliction of emotional distress.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

## COUNT FOURTEEN

### NEGLIGENT HIRING

246. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

247. Defendant Stockton University entrusted Defendants Stockton Employees who hired Defendants Stockton Employees and Resident Assistants.

248. Defendant Stockton University, as an employer, at the time of hiring employees, Defendant Stockton Employees, had reason to believe, or could have determined by reasonable investigation, that the employees were dangerous and/or ill-equipped to handle perform their duties and hired them anyway, which proximately caused injury to D.N. DiCosala v. Kay, 91 N.J. 159, 173-74 (1982).

249. Defendant Stockton University as an employer knew or had reason to know of the particular unfitness, incompetence or dangerous attributes of the Pi Kappa Phi fraternity and did nothing.

250. Defendant Stockton University and Defendants Stockton Employees, as an employer could have reasonably foreseen that Pi Kappa Phi had dangerous attributes created a risk of harm to other students at Stockton University whether on or off the premises.

251. Defendants Stockton Employees allowed a risk of harm that was foreseeable and carelessly, negligently, and recklessly disregarded.

252. Defendant Stockton University and Defendants Stockton Employees acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff by allowing Defendants Pi Kappa Phi and Novak to exist on/off campus when Stockton University had knowledge of Pi Kappa Phi's ongoing misconduct.

253. As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in

general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

**COUNT FIFTEEN**

**NEGLIGENT SUPERVISION**

254. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

255. Defendants Stockton University, Stockton University Employees, and Resident Assistants were hired and chosen by Defendant Stockton University to protect its student body.

256. Stockton University, Stockton Employees, and Stockton University Resident Assistants accepted the responsibility of protecting the student body from harm.

257. Stockton University, Stockton Employees, and Stockton University Resident Assistants, managers, training staff, and/or supervisors failed to properly monitor the defendant employees and Pi Kappa Phi, and Novak. Based on external factors and the entirety of the circumstances, a reasonable person would expect safer level of supervision and protection of its student body.

258. Plaintiff sustained injuries, which was a direct result of the failure to supervise and protect the student body.

259. Defendants Stockton University and Defendant Stockton Employees in their roles failed to maintain and implement a practical sexual abuse/harassment policy, which is evidenced by the failures of Stockton employees and Stockton students to report sexual abuse and protect against it.

260. Stockton Employees failed to reasonably supervise fraternities Pi Kappa Phi and other Greek life, which led to D.N.'s foreseeable injuries.

261. A reasonable employee could have prevented this incident coming and prevented it from happening and/or would have reported the sexual abuse once gaining knowledge of it.

262. If there was proper supervision, plaintiff would not have been sexually assaulted by Defendant Daniel Novak. Rather, Defendant Daniel Novak was granted unfettered access to D.N. through the fraternity Pi Kappa Phi which allowed him to sexually abuse D.N.

263. As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

264. Defendant Stockton University, Defendants Stockton Employees acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff by failing to supervise their employees the Defendants Daniel Novak/Stockton Employees.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

## COUNT SIXTEEN

### NEGLIGENT RETENTION

265. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

266. At all times relevant, Daniel Novak, is/was a student at Stockton University who was present on or about Stockton University's campus and is/was a member of Pi Kappa Phi fraternity.

267. Defendant Stockton University, was aware of Defendants Pi Kappa Phi fraternity and Defendant Stockton Employees Defendant Daniel Novak's dangerous propensities.

268. Defendant Stockton University, retained negligent Defendants after learning of their dangerous conduct and lack of ability to protect the student body.

269. Defendant Stockton University and Defendants Stockton Employees did not take appropriate action to prevent harm to student body and others, such as the plaintiff D.N.

270. As a result, Stockton University and Defendant Stockton Employees facilitated Daniel Novak's and Pi Kappa Phi's predatory behavior.

271. As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks;

anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

272. Defendant Stockton University, Defendants Stockton Employees acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff by retaining their employees after learning of Defendant Daniel Novak's dangerous propensities.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to

prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

### COUNT SEVENTEEN

### VICARIOUS LIABILITY

273. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

274. At all times relevant, Stockton University, Stockton Employees, and Stockton University Resident Assistants, were present on or about Stockton University's campus and allowed the underage drinking and sexual assaults to occur.

275. Defendant Stockton University, Defendants Stockton Employees as an employer, hired Stockton Employees to perform services in the affairs of Stockton University and who with respect to the physical conduct in the performance of the services is subject

to Stockton University, Defendants Stockton Employees control or right to control.

276. Defendant Stockton University, Defendants Stockton Employees exercised control over the details of the work, by which the distinct business all Defendants were engaged in, holding them vicariously liable for the Defendant Employees' failure to protect the Stockton University student body.

277. Defendants Stockton University, Defendants Stockton Employees did not take appropriate action to prevent harm to others, such as the plaintiff, D.N.

278. As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and

treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

279. Defendant Stockton University acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff by retaining employees Defendant Stockton Employees is therefore vicariously liable for their actions against the plaintiff.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

## COUNT EIGHTEEN

### RESPONDEAT SUPERIOR

280. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

281. At all relevant times, all defendant employees of Stockton University, were acting for, upon, and in furtherance of the business of their employer and within the scope of their employment.

282. As a result, Stockton University, Defendants Stockton Employees facilitated, allowed, and arranged Daniel Novak and Pi Kappa Phi's predatory behavior.

283. Consequently, Stockton University is liable under the doctrine of respondeat superior for their tortious actions of its employees.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate

conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

**COUNT NINETEEN**

**RATIFICATION**

284. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

285. Defendants Stockton Employees were agents, directors, and employees of Stockton University.

286. At the time of the acts stated in the Complaint, there was an actual or assumed agency relationship between Defendants Stockton Employees and Stockton University.

287. All acts or omissions alleged of were ratified by Stockton University. Stockton University had investigated or knew of the deviant acts of Daniel Novak, Pi Kappa Phi fraternity and Stockton University's, employees, managers, supervisors, executives, and directors were informed that Defendants Daniel Novak and Pi Kappa Phi where providing alcohol and drugs to

underage members of Stockton's student body. Defendants were sexually abusing female students and Stockton University refused to take any action to stop him.

288. Moreover, Stockton University's managers, supervisors, executives, and directors hid this information

289. Despite knowledge of Daniel Novak's and Pi Kappa Phi's conduct of sexual misconduct, no disciplinary action was taken to deter or prevent this type of misconduct that was known of occurring throughout the Stockton University campus.

290. As a result, Stockton University, Defendants Stockton Employees facilitated Daniel Novak's/ Pi Kappa Phi's predatory behavior.

291. Stockton University, is thus responsible for Daniel Novak's/ Pi Kappa Phi's acts of assault, battery, sexual abuse, false imprisonment, invasion of privacy, and intentional or negligent infliction of emotional distress.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate

conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

## COUNT TWENTY

### FAILURE TO WARN/MISREPRESENTATION

292. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

293. Defendant Stockton University, failed to do their due diligence, which would have revealed the Stockton student body information about the dangers of underage drinking, drug usage, and sexual misconduct associated with such Defendants Daniel Novak/ Pi Kappa Phi fraternity.

294. Defendant Stockton University, failed to warn that Defendant Pi Kappa Phi was a threat to the public safety of its student body.

295. Defendant Stockton University, failed to take even minimal efforts to determine whether Novak and Pi Kappa Phi was a threat to the student body and protect against it.

296. As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

297. Defendant Stockton University acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff by Pi Kappa Phi to exist and function as a university. The fraternity maintained housing as an unregistered fraternity near the Stockton University campus and organized parties, events, and other activities maintained and run by Stockton University students.

70

298. Stockton University after learning of Pi Kappa Phi dangerous propensities and failing to warn the plaintiff is therefore vicariously liable for Daniel Novak/ Pi Kappa Phi actions against the plaintiff.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

## COUNT TWENTY-ONE

### GROSS NEGLIGENCE

299. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

300. Defendant Stockton University owed a heightened duty to D.N. to exercise reasonable care in providing of proper accommodations and bodily safety for D.N. as a freshman resident living on Stockton's campus.

301. Defendant Stockton University acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff by allowing Daniel Novak and Pi Kappa Phi to maintain housing in close proximity to Stockton University's campus and take part in campus life.

302. Defendant Stockton University had a heightened duty of care to D.N. because of the inherent risk and prior history of Defendant Pi Kappa Phi that was already made known to Stockton University.

303. Defendant Stockton University breached their legal duty to D.N. and failed to exercise reasonable care, and acted with reckless, willful, and wanton disregard for her safety.

304. Defendants knew or should have known that their wanton or reckless conduct would result in a foreseeable injury to D.N.

    WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for

Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

## COUNT TWENTY-TWO

### PUNITIVE DAMAGES

305. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

306. The New Jersey Punitive Damages Act, N.J.S.A. 2A:15-5.9, punitive damages may be awarded to the plaintiff only if he or she proves, by clear and convincing evidence that the harm suffered was the result of the Defendants' acts of actual

malice, which involved public policy and social concerns Defendants, all, individually and jointly, acted with malice, fraud, wantonness, oppression, and willful misconduct, with the specific intent to cause harm.

307. The Defendants' conduct had a very serious likelihood that serious harm would arise.

308. The Defendants had awareness, careless, negligent, or reckless disregard of the likelihood that such serious harm would arise from his conduct.

309. The harm suffered was the result of the Defendants' acts of actual malice, which involved public policy and social concerns, alleged herein exceeded all possible bounds of human decency and was outrageous and unacceptable in a civilized society.

310. The aforementioned conduct of Defendants is so outrageous in character, and so extreme in degree to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community, thereby rising to the level of willful, wanton, knowing, and intentional misconduct under the Punitive Damages Act.

311. Defendant Stockton University had no proper implementation of a functional sexual abuse policy to protect students in place at the time of abuse.

312. Even if Stockton University did have a token policy in place, it is clear based on the events of the case that it was not

enforced or taught properly and supported with adequate training courses which is equal to not having a policy at all.

313. The lack of a policy is evident by the reported incidents to Stockton police of Pi Kappa Phi and other sexual assaults on and off campus to the Stockton campus with Stockton students.

314. As a direct and proximate result of the intentional, extreme and outrageous conduct of Defendants, plaintiff was caused to sustain serious, life threatening, permanent physical injuries.

315. As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in

general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

316. Defendant Stockton University acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff by retaining Stockton Employees who had learned of the dangerous propensities associated with Pi Kappa Phi and failed to warn the plaintiff, and is therefore vicariously liable for Daniel Novak/ Pi Kappa Phi actions against the plaintiff.

## COUNT TWENTY-THREE

### FICTITIOUS PARTIES

317. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

318. JANE AND JOHN DOES (1-20)(Fictitious Individuals) and ABC CORPORATIONS (A-Z); are fictitious names for persons or entities which have not yet been identified but whose identities will be supplemented when ascertained by the plaintiff.

319. Said defendants may have played a role in the harm suffered by plaintiff.

320. Plaintiffs hereby reserve their right to amend the Complaint as a result of pleading such fictitious parties.

321. John and Jane Does (1-20) and ABC Corporations (A-Z) are individuals who may have taken action or inaction that resulted in harm against the Plaintiff but as are yet unknown or not yet necessarily germane to the allegations alleged in the complaint.

322. As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

    WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages,

loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

**COUNT TWENTY-FOUR**

**DELAYED DISCOVERY – EQUITABLE ESTOPPEL**

323. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

324. Plaintiff pleads delayed discovery and/or repressed memory of the harm and thus a delay in the accrual of her claims against all parties. Plaintiff contends that the Statute of Limitations shall be tolled in accordance with the laws of the State of New Jersey, including, but not limited to, N.J.S.A. 2A:61B-1, et

seq., (reasonable discovery of the injury and its causal relationship to the act of sexual abuse hereinafter referred to as "delayed discovery"), and/or N.J.S.A. 2A:14-21, et seq., (mental state, insanity, insanity and/or lacking the ability and/or capacity due to mental infliction, to pursue Plaintiffs' lawful rights), and/or duress, and/or equitable grounds.

325. Plaintiff had no notice or information of circumstances to put her on inquiry notice of the identity of Stockton University, John Does 1-20, ABC Corporations 1-20, meaning their "sameness and oneness" in conjunction with the sexual abuse perpetrated by Defendants Daniel Novak and Pi Kappa Phi.

326. Plaintiff had not factually ascertained, nor could she have reasonably ascertained, suspected or comprehended the identity of Stockton University as tortfeasors or corporate defendants which were in any way responsible for the alleged negligent, reckless, and/or purposeful human behavior manifested as sexual abuse by Defendant Daniel Novak and Pi Kappa Phi.

327. Plaintiff had not factually ascertained, or suspected, nor could she have reasonably ascertained the actual or appreciable harm to her, constituting an indispensable element of any cause of action against Stockton University, John Does 1-20, ABC Corporations 1-20, related to the alleged negligent, reckless, and/or purposeful human behavior manifested as sexual abuse by Defendant Daniel Novak and Pi Kappa Phi.

328. Plaintiff reasonably had no awareness that Stockton University, John Does 1-20, ABC Corporations 1-20 in any capacity, were potential tortfeasors, at any time and therefore, had no incentive to sue Stockton University, John Does 1-20, ABC Corporations 1-20, because of Daniel Novak's and Pi Kappa Phi's abuse and exploitation between he, a fellow Stockton student and plaintiff D.N.

329. As a result of the acts perpetrated by Defendants against plaintiff, plaintiff became, at the time of the sexual abuse, and thereafter, chronically depressed, fearful, worried, guilt-ridden, and shameful, and did not contemplate Daniel Novak, Pi Kappa Phi fraternity and Stockton University, John Does 1-20, ABC Corporations 1-20, as tortfeasors.

330. Plaintiff was not at fault for lack of due diligence, or otherwise, for failing to discover that Daniel Novak, Pi Kappa Phi fraternity, and Stockton University, John Does 1-20, ABC Corporations 1-20, failed to properly supervise and failed to take proper action relative to the behavior of Defendant Daniel Novak and Pi Kappa Phi fraternity.

331. Defendants, Daniel Novak, Stockton University, Pi Kappa Phi , John Does 1-20, ABC Corporations 1-20, are equitably estopped from asserting a statutory defense against plaintiff since the Statute of Limitations for negligence and all other torts only began to run at the time of reasonable discovery.

332. At no time did plaintiff have actual or presumptive knowledge or suspicion of any facts sufficient to put her on notice that Daniel Novak, Pi Kappa Phi fraternity, and Stockton University, John Does 1-20, ABC Corporations 1-20, had engaged in acts or conduct or failed to properly conduct themselves so as to cause permanent serious physical and mental injury to plaintiff.

333. Defendant Stockton University failing to supervise, monitor, suspend and/or expel Defendant Daniel Novak and members of Pi Kappa Phi fraternity in light of the notice of inappropriate conduct.

334. Defendants Stockton University, Daniel Novak, Pi Kappa Phi John Does 1-20, ABC Corporations 1-20, further breached their fiduciary duty to plaintiff to provide her a safe haven, by failing to take any action upon notice, constructive or otherwise, of Pi Kappa Phi and Daniel Novak's conduct, as alleged in all counts of this complaint.

335. Had Stockton University, Pi Kappa Phi, John Does 1-20, ABC Corporations 1-20, adequately performed their duties to properly employ, monitor, and supervise Daniel Novak, plaintiff would not have been subject to all, or some, of the sexually inappropriate conduct of Daniel Novak as alleged in this complaint.

336. As a direct and proximate result of the conduct described herein above, plaintiff has suffered physical injury; severe emotional distress; diminished enjoyment of life; diminished enjoyment of

childhood; difficulty and an inability to focus; difficulty and
an inability to perform educational tasks; anxiety; depression;
humiliation; pain in mind and body; severe embarrassment; is
having and has had difficulty living a normal life; is and has
not engaged in normal development and activities; suffers from
behavior patterns and will continue to do so in the future; will
in the future be caused to endure severe pain in mind and body;
has endured interference with and will continue to endure
interference with engaging in his full normal daily activities.
Plaintiff's self-esteem and ability to trust others has been
substantially impaired, making it difficult to obtain help and
treatment from professionals and health care professionals in
general and may incur medical, hospital and psychiatric expenses
in amounts yet to be determined.

337. As a direct and proximate result of the conduct described herein
above, Plaintiff has and will continue to suffer physical
injury; severe emotional distress and anguish; diminished
enjoyment of life;; difficulty and an inability to focus;
difficulty and an inability to perform work-related tasks;
anxiety; depression; humiliation; pain in mind and body; severe
embarrassment; is having and has had difficulty living a normal
life; has not and will not engage in normal activities; will
suffer from behavior patterns and will continue to do so in the
future; will in the future be caused to endure severe pain in

mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and /or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and /or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

## COUNT TWENTY-FIVE

## CIVIL CONSPIRACY OF PI KAPPA PHI, ITS MEMBERS AND ASSOCIATES, AND STOCKTON UNIVERSITY

338. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

339. The fraternity Pi Kappa Phi and its members and associates entered into an agreement with other members for the purpose of committing a criminal act of providing alcohol and/or illegal drugs to underage women, spiking "Jungle Juice" or other alcoholic beverages in order to incapacitate women to assault them physically and or sexually. The Fraternity members and associates of Pi Kappa Phi agreed to and took part in these fraternity actions, thereby putting Plaintiffs in severe physical and personal harm.

340. Defendants and John Does 1 -20 took steps to further conspire by providing alcohol and/or drugs to underage Plaintiffs, by incapacitating them and physically and/or sexually assaulting plaintiffs while they were incapacitated and unable to consent to said acts.

341. Defendants did in fact commit the above acts against Plaintiff.

342. In furtherance of said conspiracy with each other Defendants and John Does 1 -20 committed these tortuous acts.

343. Above Defendants were acting in the course of their agency relationship as Pi Kappa Phi fraternity members and associates when said tortuous acts were committed.

344. In furtherance of the authority given to them by Defendant Stockton University, the University clothed the Pi Kappa Phi Fraternity with the apparent authority to attend campus events which allowed the fraternity to exist and operate.

345. Plaintiff suffered substantial harm because of the civil conspiracy by Defendant Pi Kappa Phi, its members, and associates.

346. Defendants are directly and collectively liable for the aforementioned actions of the members/associates of Pi Kappa Phi and Defendants are directly and vicariously liable for the aforesaid acts of its members and associates.

347. As a direct and proximate result of the Defendants' civil conspiracy the Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life;; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain

in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and /or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and /or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

1. For a declaration that Defendants' actions, policies, and practices as alleged herein are unlawful;

2. For lost wages and all other compensation denied or lost to Plaintiff by reason of Defendants' unlawful actions, in an amount to be proven at trial;

3. For compensatory damages for Plaintiff's emotional pain and suffering, in an amount to be proven at trial;

4. For punitive damages in an amount to be determined at trial;

5. For liquidated damages;

6. For interest on lost wages, compensation, and damages, including pre- and post-judgment interest and an upward adjustment for inflation;

7. For an order enjoining Defendants from engaging in the unlawful acts complained of herein;

8. For reasonable attorneys' fees and costs of suit pursuant to 42 U.S.C. § 2000e-5(k), New Jersey Revised Statutes § 10:5-27.1, and other laws; and

9. For such other and further relief as this Court deems just and proper.


FUGGI LAW FIRM, P.C.


ROBERT R. FUGGI, JR., ESQ.

DATE: 7/20/18

## JURY DEMAND

Plaintiff hereby demands a trial by a jury on all of the issues contained herein.

FUGGI LAW FIRM, P.C.

ROBERT R. FUGGI, JR., ESQ.

## DESIGNATION OF TRIAL COUNSEL

ROBERT R. FUGGI, JR., ESQ., is hereby designated as trial counsel in this matter.

FUGGI LAW FIRM, P.C.

ROBERT R. FUGGI, JR., ESQ.

## PLAINTIFF'S DEMAND FOR DAMAGES

Plaintiff hereby demands damages from Defendants in an amount to be determined at the time of trial.

FUGGI LAW FIRM, P.C.

ROBERT R. FUGGI, JR., ESQ.

## CERTIFICATION

Pursuant to Rule 4:5-1, it is hereby certified that the matter in controversy is not the subject of any other action pending in any Court or arbitration proceeding and plaintiff does not contemplate any other action or Arbitration proceeding.

I certify that the foregoing statements made by me are true and correct to the best of my knowledge and information. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

FUGGI LAW FIRM, P.C.

ROBERT R. FUGGI, JR., ESQ.

## DEMAND FOR ANSWERS TO INTERROGATORIES

Plaintiff(s) hereby make(s) demand for fully responsive answers to New Jersey Court Rules Appendix II, Form C answers within sixty (60) days of the date of service of this Complaint.

In answering, please consider the events alleged in this Complaint as the accident or occurrence and to which such questions relate. Please give specific information in your answers and not merely references to medical, police or other records or reports.

FUGGI LAW FIRM, P.C.

ROBERT R. FUGGI, JR., ESQ.

**NOTICE TO PRODUCE**

Pursuant to the Rules of Court, the undersigned requests that you produce the following documents and other items for inspection and copying at the offices of FUGGI LAW FIRM, P.C. 47 Main Street, Toms River, New Jersey 08753, within 30 days. You may comply with this request by mailing legible copies of the documents.

1. All written statements made and/or signed by any party Defendant or their agent, servant or employee, relative to reports made to any Defendant(s) their agent(s), servant(s) or employee(s) relative to any act or behavior of Defendants involving harassment, assault and intention infliction of emotional distress.

2. All written statements made and/or signed by the party serving this request or by any agent or employee of the party serving this request.

3. All written evidence of any oral statements made by the party serving this request or by any agent or employee of the party serving this request.

4. All charts, drawings, illustrations, diagrams, and other documents that you or your attorneys intend to exhibit to the jury or introduce into evidence at the trial of this action.

5. All records pertaining to any tests, inspections and examinations performed with respect to any object, thing, or substance relevant to this action. This refers to tests and examinations performed by persons other than you, your attorneys, or anyone acting on your behalf.

6. All documents that you or your attorneys supplied to any experts who will be called as witnesses on your behalf at the trial of this action.

7. All videos and films that you or your attorneys intend to exhibit to the jury or introduce into evidence at the trial of this action.

8. The written reports of all experts who you or your attorneys intend to call as witnesses on your behalf at the trial of this action.

9. Copies of any and all Complaints filed in this State or any other against any of the Defendants arising out of allegations of assault, general negligence, or intentional infliction of emotional distress.

10. All police reports relative to any action or behavior engaged in by Defendant or any Defendant, their agent servant or employee, from date of hiring to present.

11. All interrogatories, and Notices to Produce previously answered by you in this action. All depositions noticed by you or taken of you.

FUGGI LAW FIRM, P.C.

ROBERT R. FUGGI, JR., ESQ.