**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | |
|---|---|
| D.N., | |
| Plaintiff, | Civil No. 18-11932(RMB/JS) |
| v. | **OPINION** |
| STOCKTON UNIVERSITY, DANIEL NOVAK, PI KAPPA PHI, JOHN DOES (1-20), A-Z OWNERS CORPORATIONS (1-20), | |
| Defendants. | |

**APPEARANCES:**

FUGGI LAW FIRM
By: Robert R. Fuggi, Esq.
47 Main Street, P.O. Box 1808
Toms River, New Jersey 08754
        Counsel for Plaintiff D.N.

OFFICE OF THE ATTORNEY GENERAL OF NEW JERSEY
By: Michael R. Sarno, Deputy Attorney General
R.J. Hughes Justice Complex
25 Market Street, P.O. Box 116
Trenton, New Jersey 08625
        Counsel for Defendant Stockton University

CONRAD, O'BRIEN, GELLMAN & ROHN, PC
By: Kevin Dooley Kent, Esq.
1500 Market Street, Centre Square
West Tower, Suite 3900
Philadelphia, Pennsylvania 19102
        Counsel for Defendant Daniel Novak

ZARWIN BAUM DEVITO KAPLAN SCHAER TODDY, P.C.
By: Timothy P. Mullin, Esq.
309 Fellowship Road, Suite 200
Mt. Laurel, New Jersey 08054
        Counsel for Defendant Pi Kappa Phi Fraternity, Inc.

**RENÉE MARIE BUMB**, UNITED STATES DISTRICT JUDGE:

Plaintiff D.N. ("Plaintiff") brings this action against Defendants Stockton University ("Stockton"), Daniel Novak ("Novak"), and Pi Kappa Phi Fraternity, Inc. ("PKP") (collectively, "Defendants"), in relation to an alleged sexual assault during her time as a student at Stockton University. Plaintiff alleges that she was sexually assaulted by Defendant Daniel Novak, and possibly others, in Novak's dorm room on September 23, 2014, following an off-campus "date night" party at the local PKP fraternity house. Plaintiff's Complaint (the "Complaint")[Dkt. No. 1] asserts causes of action under Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681, et seq. (Counts 1-2), Section 1983 of the Civil Rights Act, 42 U.S.C. § 1983 (Counts 3-4), the Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act ("Clery Act"), 20 U.S.C. § 1092 (Count 5),[1] personal injury tort claims (Counts 6-16), as well as various derivative claims (Counts 17-25).

This matter now comes before the Court upon Motions to Dismiss, filed by all Defendants. [See Dkt. Nos. 36, 38, 39]. Although the Court accepts all of Plaintiff's disturbing

---

[1] In response to Defendants' Motions to Dismiss, Plaintiff conceded that the Clery Act does not allow for a private cause of action and voluntarily withdrew Count 5 of the Complaint. See Plaintiff's Brief in Opposition to the Motions to Dismiss ("Pl.'s Opp. Br.")[Dkt. No. 49], at 57._ Therefore, the Court will not address Plaintiff's Clery Act claim in this Opinion.

allegations as true for purposes of these motions, the Court is constrained by legal precedent mandating dismissal. For the reasons set forth herein, Defendants' Motions to Dismiss will be granted, and Plaintiff's Complaint will be dismissed, without prejudice. The Court, however, will allow Plaintiff thirty (30) days to file an amended complaint, addressing the deficiencies discussed in this Opinion.

I. **FACTUAL BACKGROUND**

Plaintiff's Complaint describes her alleged sexual assault in grave detail. As averred, Plaintiff originally met Daniel Novak at Stockton University's freshman orientation early in summer 2014, kept in touch with him throughout the rest of the summer, and became friendly after they arrived on campus for their freshman year in the fall. See Compl. at ¶¶ 13-16. In September 2014, Novak invited Plaintiff to join him for a "Fraternity Date Night/Rush Event" for pledges and their dates at the Pi Kappa Phi fraternity house. Id. at ¶ 23. Novak told Plaintiff that the event would be "dressier than a regular party" and suggested that "Plaintiff wear something nice." Id. at ¶ 24. Plaintiff states that it made her "feel a little special" that she had been asked to an "invite only" rush party. Plaintiff states that she was unaware that PKP was an "off-campus"

fraternity that was "unrecognized" by the University. Id. at ¶ 25.

Upon arriving at the fraternity house around 12:30 a.m. on September 23, 2014, multiple PKP members or pledges "gathered around" Plaintiff and complimented "her for the way she looked." See Compl. at ¶ 57. After entering the party, "Novak brought over two alcoholic drinks, one for [Plaintiff] and one for him, which were both in clear cups," but one was red and the other was green. Id. at ¶¶ 63-64. Novak handed Plaintiff the drink with the "green concoction." Id. Because the cups were clear, Plaintiff noticed that all of "the girls had to drink the green drinks and the guys were drinking the red drinks." Id.

Plaintiff recalls that her green drink "tasted like watered down fruit juice and also that it was very salty with an unusual taste." See Compl. at ¶ 65. Plaintiff commented on the unusual taste of her drink and asked Novak if she could taste his drink. Plaintiff noticed that Novak's drink "tasted vastly different" than her own. Id. at ¶ 68. Plaintiff alleges that she asked Novak to taste her drink, but he refused. Id. at ¶ 69. After becoming uncomfortably hot and thirsty in the fraternity house, Plaintiff asked Novak for another drink and he provided her with another cup of the "green drink." Id. at ¶¶ 70-71.

Plaintiff danced with Novak, but soon thereafter, she "began to feel a very odd feeling suddenly come over her." See Compl.

at ¶ 73.  Plaintiff remembers "feeling very weird. Not drunk but not right." Id. at ¶ 75.  Novak stated that he would get them a ride back to the Stockton campus. Id. at ¶ 76.  Plaintiff states that her last memory of the night before "blacking out" was being in the PKP basement "with an extreme headache, being very thirsty and tired and feeling strangely" and telling Novak that she wanted to go back to her dorm. Id. at ¶¶ 77-78.  Plaintiff estimates that she was only at the PKP house for forty-five minutes to an hour before becoming incapacitated. Id. at ¶ 79.

Plaintiff's next memory was "waking up in Defendant Novak's on-campus Stockton dormitory room... in his bed with him staring at her naked." See Compl. at ¶ 81.  Plaintiff recalls that she "was unusually sore all over, including her vagina and anus, and felt that something sexual had happened to her." Id. at ¶ 82. Plaintiff "did not remember taking off any of her clothes because she was too incapacitated." Id.  Plaintiff noticed that her undergarments were missing and that "the clothes she had worn to the party the night before were inside out and [] rolled into a ball on the floor as if they were pulled off her and thrown." Id. at ¶¶ 84-85.  "Barefoot, disheveled, and sore (including in her vagina and anus)," Plaintiff headed back to her dorm room. Id. at ¶ 90.

Plaintiff alleges that she "never consented to sexual relations with Novak that night in question. It would have been

impossible for her to consent considering her incapacitated state." See Compl. at ¶ 107. Later on September 23rd, Plaintiff saw a hometown friend at Starbucks and confided in him that "she thought something bad had happened," and "that she may have been drugged and/or sexually assaulted." Id. at ¶¶ 93-94. Plaintiff missed two classes that day as she recovered from the previous night. Id. at ¶ 97. The next day, Plaintiff "was so sore she could barely move" and "for a few more days, she was extremely sore, bleeding vaginally and rectally." Id. at ¶¶ 100, 102.

In the days following the sexual assault, Plaintiff exchanged text messages with Novak and inquired as to whether he had sex with her on the 23rd, to which he replied "yes, don't you remember?" See Compl. at ¶ 106. The next month, Novak called Plaintiff and said "he was sorry for what happened a month before," but did not elaborate further. Id. at ¶ 110. Based on a subsequent police investigation that showed two of Novak's friends swiping into his dorm hallway within minutes of his arrival on September 23, 2014, "Plaintiff believes she may have been sexually assaulted by all three (3) male Stockton University students that night – both vaginally and anally." Id. at ¶ 108.

Following the sexual assault, Plaintiff claims that she "felt mentally distraught and emotionally unstable due to this traumatic experience." See Compl. at ¶ 109. Plaintiff became depressed, anxious, and "found it difficult to make it through

each week of school and she did not go out or attend Stockton University parties anymore." Id. at ¶ 112. In the spring of 2015, Plaintiff began attending University-sponsoring counseling. Id. at ¶ 120.

On April 15, 2015, Plaintiff disclosed the sexual assault to her University-sponsored counselor, Carlos Martinez, which immediately resulted in a meeting with representatives from the University, Laurie Dutton and Amy Jones. See Compl. at ¶ 123. As the Spring 2015 ended, Plaintiff alleges that she and her mother were told "not to discuss the incident publicly" because it "would make the Women's Center and Laurie Dutton look bad." Id. at ¶ 124.

On January 20, 2016, Plaintiff met with Stockton representatives, Valerie Hayes and Diane Epp, "in pursuit of [a] Title IX proceeding against Defendant Novak." See Compl. at ¶ 136. A few days later, on January 22, [2016], Plaintiff met with the Interim Chief of the Stockton Police to "review facts/evidence." Id. at ¶ 137. On January 27, 2016, Plaintiff reported the sexual assault to Officer Grygon, Officer Collins, and Title IX Advocate Valerie Hayes. Id. at ¶ 138. Plaintiff states that Stockton's Title IX investigation concluded in March 2017, without any administrative action being taken against Novak or PKP. Id. at ¶ 141.

On July 20, 2018, Plaintiff commenced this action against Defendants. Now, this matter comes before the Court upon motions to dismiss, filed by Stockton [Dkt. No. 39], Novak [Dkt. No. 37], and PKP [Dkt. No. 38]. Defendants present varying arguments in favor of dismissal, but all Defendants argue that Plaintiff untimely asserted her claims after the two-year statute of limitations had already expired.

## II. <u>LEGAL STANDARD</u>

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)(quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> at 662. "[A]n unadorned, the defendant-unlawfully-harmed-me accusation" does not suffice to survive a motion to dismiss. <u>Id.</u> at 678. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Twombly</u>, 550 U.S. at 555 (quoting <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986)).

In reviewing a plaintiff's allegations, the district court "must accept as true all well-pled factual allegations as well as all reasonable inferences that can be drawn from them, and construe those allegations in the light most favorable to the plaintiff." <u>Bistrian v. Levi</u>, 696 F.3d 352, 358 n.1 (3d Cir. 2012). When undertaking this review, courts are limited to the allegations found in the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents that form the basis of a claim. <u>See</u> <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1426 (3d Cir. 1997); <u>Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993).

## III. <u>DISCUSSION</u>

In their respective motions to dismiss, Defendants set forth various arguments for dismissal. Notably, all Defendants argue that Plaintiff's Complaint must be dismissed because it was filed after the expiration of the two-year statute of limitations on Plaintiff's claims. In addition to the statute of limitations defense, Stockton argues that Plaintiff fails to adequately allege Title IX and § 1983 claims, and that Plaintiff cannot maintain tort claims against Stockton because Plaintiff failed to serve notice under the New Jersey Tort Claims Act ("TCA"). PKP also separately argues that Plaintiff has failed to sufficiently

allege vicarious liability against PKP.  Based on the manner in which the allegations are currently pled in the Complaint, the Court must rule in favor of Defendants.

**A. *Statute of Limitations (Generally)***

All Defendants seek to dismiss Plaintiff's claims as time-barred under the relevant statutes of limitations.  Generally, a statute of limitations is an affirmative defense not normally decided on a motion to dismiss. See <u>Mesadieu v. City of Elizabeth</u>, 2019 WL 2385901, at *2 (D.N.J. June 6, 2019)(citing <u>Crump v. Passaic County</u>, 147 F. Supp. 3d 249, 259 (D.N.J. 2015).  However, "where the complaint facially shows noncompliance with the limitations period," dismissal on statute of limitations grounds may be appropriate. <u>Id.</u>

In this case, the applicable statute of limitations for each of Plaintiff's claims is two years. See <u>Dique v. New Jersey State Police</u>, 603 F.3d 181, 185 (3d Cir. 2010)(noting that New Jersey mandates a two-year statute of limitations period for personal-injury torts); <u>Bougher v. Univ. of Pitt.</u>, 882 F.2d 74, 77–78 (3d Cir. 1989)(applying the local statute of limitations for personal injury claims to Title IX claims); <u>Pearson v. Sec'y Dep't of Corr.</u>, 775 F.3d 598, 602 (3d Cir. 2015)(applying the local statute of limitations to § 1983 actions). Plaintiff filed her complaint on July 20, 2018; thus, any claims that accrued before July 20, 2016 would be time-barred.  Below, the Court analyzes

the accrual date and applicability of the statute of limitations
to each of the specific claims.

### B. *Personal Injury Claims (Statute of Limitations)*

Under New Jersey state law (which governs Plaintiff's
personal injury claims), the date of accrual for a personal
injury claim will generally be the date of the tortious conduct
or incident resulting in the injury. See Beauchamp v. Amedio, 164
N.J. 111, 117 (2000). As such, Defendants contend that dismissal
of Plaintiff's personal injury tort claims is warranted because
these claims accrued on September 23, 2014, the date of the
alleged sexual assault.

In response, Plaintiff alleges that her claims should be
tolled under the equitable doctrines of "delayed discovery"
and/or "repressed memory." Under New Jersey law, the discovery
rule postpones a claim from accruing if a plaintiff is not
reasonably aware that she had suffered an injury or if she cannot
identify whether it was the fault of the specific person (even if
she was aware of the injury). See Caravaggio v. D'Agostini, 166
N.J. 237 (2001). As set out by the New Jersey Supreme Court, the
accrual of the claim will be postponed until the "injured party
discovers, or by exercise of reasonable diligence and
intelligence should have discovered, that [she] may have a basis

for an actionable claim." <u>Lopez v. Swyer</u>, 62 N.J. 267, 272 (1973).

Plaintiff also argues that her claims should be tolled under the Child Sexual Abuse Act ("CSAA"), N.J.S.A. 2A:61B-1, et seq., which provides special protections against the statute of limitations to plaintiffs who were under the age of 18 years at the time of their sexual abuse. N.J.S.A. 2A:61B-1(a)(1). That statute provides that a cause of action for sexual abuse, defined as "an act of sexual contact or sexual penetration between a child under the age of 18 years and an adult," accrues "at the time of reasonable discovery of the injury and its causal relationship to the act of sexual abuse." N.J.S.A. 2A:61B-1(a)(1) & (b). In addition, the CSAA provides that the statute of limitations may be further tolled "because of the plaintiff's mental state, duress by the defendant, or any other equitable grounds." N.J.S.A. 2A:61B-1(c). The New Jersey legislature passed the CSAA in recognition of "the unique nature" of childhood sexual abuse. <u>See</u> <u>Schmotzer v. Rutgers Univ.-Camden</u>, 2017 WL 2691415, at *8 (D.N.J. June 21, 2017). However, in Plaintiff's Complaint, she makes no allegation that she was under the age of 18 at the time of the sexual assault. Therefore, this Court will not apply the CSAA to toll the statute of limitations.

Although Plaintiff asserts that circumstances, such as mental anguish, prevented her claims from accruing, Plaintiff's

12

allegations undercut her argument and demonstrate that she was "reasonably aware that she had suffered an injury." To that point, Plaintiff's pleadings support a finding that she was aware that she had been sexually assaulted almost immediately after waking up in Novak's bed the following morning. Indeed, on the very same day as the alleged assault, Plaintiff told a hometown friend that "she thought something bad had happened" and "that she may have been drugged and/or sexually assaulted." See Compl. at ¶ 94. Plaintiff also alleges that she immediately felt the physical injuries of the sexual assault. Her suspicions were confirmed within a few days after the assault, when Novak admitted to her that he had sex with her on September 23, 2014. Plaintiff acknowledges in her pleadings that the sex was not consensual, because it "would have been impossible for her to consent considering her incapacitated state." Id. at ¶ 107.

The pleadings further demonstrate that Plaintiff knew about the sexual assault by the time she reported it to her university-provided counselor on April 15, 2015. At the latest, Plaintiff would have known about the sexual assault when she met with Stockton representatives and police in January 2016 to pursue a Title IX action, as alleged in the Complaint. Because Plaintiff's pleadings facially show that she knew she had suffered an injury and that Novak was responsible as early as the day following the alleged assault, the Court is constrained to

find that the statute of limitations for Plaintiff's personal injury claims expired no later than January 2018.

This Court notes, however, an additional exception where a plaintiff, "although aware of an injury, does not know that a third party is responsible." See Beauchamp v. Amedio, 164 N.J. 111, 117 (2000). Relevantly, Plaintiff alleges that a subsequent police report indicated two other male students swiped onto Novak's hallway shortly after he arrived there with Plaintiff. For this reason, Plaintiff alleges that it is her belief that she was sexually assaulted by all three individuals. See Compl. at ¶ 108. If Plaintiff is alleging that she learned at a later date that previously unknown third parties, along with Novak, sexually assaulted her, Plaintiff's discovery of this information potentially gives rise to claims that would have accrued only once Plaintiff received the police report. Thus, the discovery of the information in the police report could serve to toll certain claims. However, Plaintiff's Complaint does not provide the date on which she learned of this additional information. If Plaintiff chooses to amend her Complaint, she should clarify what claims, if any, she would assert that might be tolled as a result of the police report.

**C.** *Personal Injury Claims (Tort Claims Act)*

In addition to the statute of limitations point, Stockton also argues that Plaintiff's personal injury claims against the university must be dismissed for failure to meet the TCA's notice of claim requirement. The TCA imposes certain limitations on the tort liability of a New Jersey public entity and of a New Jersey public employee. See N.J.S.A. 59:1-2; N.J.S.A. 59:2-1; N.J.S.A. 59:3-1. Of relevance to this action, the TCA precludes actions against a public entity or its employees when the plaintiff has failed to comply with its notice of claim provision. See Coreas v. McGuire, 2010 WL 1849939, at *2 (D.N.J. May 7, 2010)(citing N.J.S.A. 59:8-3; N.J.S.A. 59:8-8). Indeed, "[a] suit will be dismissed if the claimant did not provide a notice of claim to the entity within ninety days of the 'accrual of a cause of action.'" Davis v. Twp. of Paulsboro, 371 F.Supp.2d 611, 618 (D.N.J. 2005).

In this matter, Plaintiff has neither addressed the merits of Stockton's argument on this point nor claimed that she has complied with the TCA. Thus, even if they were not barred by the statute of limitations, the Court would dismiss the personal injury claims against Stockton. As such, the Court notes that any effort to amend the complaint to address that issue would be futile, because Plaintiff's failure to file the mandatory notice

of claim bars her from proceeding with her personal injury tort claims against Stockton.

### D. *Title IX and § 1983 Claims*

Stockton argues that Plaintiff fails to state a claim under Title IX and Section 1983, and that any possible claims are barred by the statute of limitations. A private Title IX and § 1983 claim may lie against a public school in cases of student-on-student harassment, but "only where the funding recipient is deliberately indifferent to sexual harassment, of which the recipient has actual knowledge, and that harassment is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ., 526 U.S. 629 (1999).

"Deliberate indifference claims impose a significant burden on the plaintiff and consequently rarely proceed beyond a motion to dismiss." Saravanan v. Drexel Univ., 2017 WL 5659821, at *7 (E.D. Pa. Nov. 24, 2017). Under Title IX, deliberate indifference requires "a response (or failure to respond) that is clearly unreasonable in light of the known circumstances." Keel v. Delaware State Univ. Bd. of Trustees, 2019 WL 494621, at *6 (D. Del. Feb. 8, 2019). Furthermore, under § 1983, Plaintiff must allege that the school purposefully discriminated against

her and treated her differently than others similarly situated. See id. at *7.

Stockton argues that Plaintiff's Complaint only makes out one possible Title IX and § 1983 cause of action for deliberate indifference, and that it is time-barred. Specifically, Stockton references Plaintiff's allegation that Stockton did not immediately take remedial action and cautioned her not to publicly discuss the matter after she reported her sexual assault in April of 2015. However, Stockton's last action related to that instance happened before the end of the spring semester in 2015. Therefore, any Title IX or § 1983 claims related to her initial report of the sexual assault would be time-barred.

Plaintiff alleges that she pursued a Title IX proceeding in January 2016 and that the investigation concluded in March 2017 with no administrative actions against Novak or PKP. However, Plaintiff's Complaint does not specify anything that Stockton did during the handling of that investigation that would constitute deliberate indifference, aside from failing to reach Plaintiff's desired outcome. At no point does Plaintiff allege that the outcome or the processes that resulted in the outcome were unreasonable. Without more specific allegations, the Court cannot find that Plaintiff has stated a Title IX or § 1983 claim that accrued within the statute of limitations.

**E.  *Vicarious Liability (Against PKP)***

In her Complaint, Plaintiff alleges that PKP, the national fraternity organization, is liable for Novak's tortious conduct under a theory of vicarious liability or respondeat superior.  In its Motion to Dismiss, PKP argues that it did not owe a duty to protect Plaintiff from a sexual assault, committed by a student pledging its local chapter (rather than a full member), that occurred in a dormitory (rather than at the fraternity house).

"Whether a person owes a duty of reasonable care toward another turns on whether the imposition of such a duty satisfies an abiding sense of basic fairness under all of the circumstances in light of considerations of public policy. That inquiry involves identifying, weighing, and balancing several factors—the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution." Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 439 (1993)(internal citations omitted). When conducting this analysis, [t]he foreseeability of the harm involved is one of the many considerations in assessing whether a duty is owed." Peguero v. Tau Kappa Epsilon Local Chapter, 439 N.J. Super. 77, 89 (App. Div. 2015).  Additionally, foreseeability is "based on the defendant's knowledge of the risk of injury." Id.(internal citations omitted).

In <u>Peguero</u>, the Superior Court of New Jersey, Appellate
Division, found that a fraternity was not liable for injuries
sustained when a guest at a party fired a gun in the backyard of
the fraternity house.  In that case, the Superior Court found
that it was not reasonably foreseeable that an "unknown
assailant" would bring a gun to the party, drink heavily, get
into an altercation, fire the handgun, and injure someone. <u>See</u>
<u>id.</u> at 93. However, in dicta, the court opined that it was not
suggesting that "a fraternity or its members could not be liable
for criminal or other dangerous behavior that occurs during the
course of a party hosted by fraternity members." <u>Id.</u> at 93.  The
Superior Court added that it was "cognizant of the tragic
consequences of hazing, excessive drinking, sexual assaults, and
other harmful acts that have occurred at fraternity houses or at
other fraternity events." <u>Id.</u>

Under similar circumstances, other Courts have found that
national fraternities are not liable for the tortious conduct of
their members. Recently, the Middle District of Tennessee found
that the national organization of the Pi Kappa Alpha fraternity
was not liable for an alleged sexual assault by a fraternity
member. <u>Doe v. Andrew</u>, 2017 WL 3443598, at *13-14 (M.D. Tenn.
Aug. 9, 2017). In relevant part, the court stated:

> "The Court concludes Doe's injuries and the manner in
> which they occurred were not reasonably foreseeable so
> as to give rise to a special relationship with Doe.

Certainly, a sexual assault at a fraternity party—or any party—is foreseeable, in the sense that it does not defy the rules of logic and common sense to think that it might happen. But foreseeability for purposes of identifying duties under tort law requires more than that. It requires at least <u>reasonable</u> foreseeability—a foreseeability built on something more than mere possibilities."

...

"Here, however, there is no evidence the Chapter had notice of any sexual misconduct by any Chapter member, including Andrews. The Court agrees with the Chapter that knowledge of allegations of sexual misconduct at a few other Pi Kappa Alpha chapters was not sufficient to raise the possibility of sexual assault to such reasonable foreseeability as to give rise to a duty by the Chapter to take additional specific precautions to protect its guests, such as Doe."

<u>Id.</u> (emphasis in original); <u>see also</u> <u>Ostrander v. Duggan</u>, 341 F.3d 745, 749 (8th Cir.2003)(finding that the defendant fraternity had no duty to protect plaintiff from a sexual assault because the plaintiff "adduced no evidence that would cause a reasonable person to foresee injury to herself or other female visitors arising from sexual misconduct at the [fraternity] premises"); <u>Rogers v. Sigma Chi Int'l Fraternity</u>, 9 N.E.3d 755, 765 (Ind.Ct.App.2014) (granting summary judgment to the national Sigma Chi fraternity for what it deemed to be an "unforeseeable" criminal assault of a party attendee by another guest); <u>Colangelo v. Tau Kappa Epsilon Fraternity</u>, 517 N.W.2d 289, 292 (1994) (finding that "the national fraternity owed no duty to supervise

the local chapter's actions for the protection of third parties"
for injuries arising from a drunk driving accident).

Although Plaintiff argues that it was reasonably foreseeable
that PKP fraternity members and pledges would drug and sexually
assault females brought to parties at an unrecognized off-campus
fraternity house, this Court cannot reach that conclusion based
on the pleadings.  In this case, Plaintiff has not alleged that
PKP was on notice of any prior incidents involving sexual assault
or the use of "date-rape" drugs at the Stockton PKP fraternity
house.  Plaintiff has also not alleged that PKP had any specific
knowledge that Novak, or other fraternity members, posed a risk
to drug and sexually assault female party guests. Furthermore,
the alleged sexual assault in this case did not even occur on the
PKP property.

In Plaintiff's Brief in Opposition to the MTD, Plaintiff
alleges for the first time that call logs from the Galloway
Township Police indicate 59 calls to the Stockton PKP house since
2008, with three calls for "sexual assault/attempts."  See Pl.'s
Opp. Br., at 16.  However, Plaintiff may not amend her Complaint
through a response to a motion to dismiss.  Regardless, of the
three police responses to sexual assaults at the PKP house, two
occurred in 2017 and 2018; incidents that occurred after
Plaintiff's alleged sexual assault have no bearing on
foreseeability in this case.  Therefore, if the Court had not

dismissed the claims against PKP on statute of limitations grounds, dismissal would have still been warranted for failure to state a claim for vicarious liability.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss will be **GRANTED** and Plaintiff's Complaint will be **DISMISSED**, without prejudice.  Plaintiff shall be permitted thirty (30) days to file an amended complaint that addresses the deficiencies set forth herein, to the extent possible.  An appropriate Order shall issue on this date.

DATED: June 28, 2019

s/Renée Marie Bumb
RENÉE MARIE BUMB
UNITED STATES DISTRICT JUDGE
